IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JACOB P. FEAZEL,

          Plaintiff,

v.

AMEREN LONG TERM DISABILITY PLAN
FOR NON-UNION EMPLOYEES, AND
AMEREN SERVICES COMPANY AS PLAN
ADMINISTRATOR,

          Defendants.    No. 17-cv-01221-DRH-SCW

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.    Introduction

Before the Court is defendants Ameren Long Term Disability Plan For Non-Union Employees and Ameren Services Company's ("defendants") motion to dismiss, or in the alternative, to stay, plaintiff Jacob P. Feazel's complaint pending exhaustion of administrative remedies (Doc. 16). For the reasons explained below, the Court **GRANTS** the defendants' motion to dismiss for failure to exhaust administrative remedies.

## II. Background

On April 1, 1983, plaintiff Jacob P. Feazel ("Feazel") retired from his employment at Union Electric Company, a predecessor of Ameren (Doc. 1, ¶¶ 8, 12–13). Upon retirement, Feazel received a letter informing him that he was entitled to a monthly disability payment under the applicable Union Electric Long Term Disability Plan (Doc. 1, Ex. A). The letter stated that Feazel would receive a monthly benefit of $389.72 for the rest of his life, assuming he remained disabled (*Id.*). Feazel received this benefit pursuant to the Union Electric Plan, and later the Ameren Long Term Disability Plan for Non-Union Employees (the "Plan") (*Id.* at ¶ 17). On August 18, 2017, Feazel received a letter from Ameren stating that an internal audit revealed that Feazel had been improperly receiving benefits for a period beyond the Plan's Maximum Benefit Period (Doc. 1, Ex. B).[1] The letter advised Feazel that the Plan would not seek repayment of the benefits he had improperly received, but that the date of his final payment under the Plan would be September 1, 2017 (*Id.*). However, on November 1, 2017, Ameren apparently deposited $370.43 into Feazel's bank account (*Id.* at ¶¶ 25, Ex. E). Consistent with the termination of Feazel's Plan benefits, Ameren recouped the deposit a few hours later, but several hours thereafter, an "unknown entity"[2] reversed the

---

[1] Although the August 18, 2017 letter describes the Plan's Maximum Benefits Period, it is not clear from the pleadings when Feazel allegedly became ineligible for the benefits he continued to receive. *See* Doc. 1, Ex. B.

[2] Plaintiff's counsel presumes that Scott Credit Union reversed the withdrawal after he called to inform them that the withdrawal was unauthorized (Doc. 1, ¶ 27).

withdrawal and credited Feazel's account with the original deposit amount of $370.43 (*Id.* at ¶¶ 26–27, Ex. E).

One week later, on November 7, 2017, Feazel initiated this action by filing a complaint (Doc. 1) alleging that he is entitled to benefits under the Plan and seeking penalties for the defendants' failure to provide requested Plan documents (*Id.* at ¶¶ 1, 1, 23–28, 35–38). Feazel also alleges that Ameren breached its fiduciary duties in two ways. First, he alleges that Ameren caused him emotional distress by discontinuing his benefits and reversing the November 1, 2017 deposit (*Id.* at ¶¶ 29–34). Second, he alleges that Ameren failed to provide him with requested Plan documents (*Id.* at ¶¶ 35–38).

The defendants argue that Feazel's complaint should either be dismissed pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), or stayed, because Feazel has failed to exhaust his administrative remedies as required by the Employee Retirement Income Security Act of 1974 (ERISA) (Doc. 17, pp. 4–6; Doc. 25, pp. 2–3). The defendants also argue that Feazel's complaint should be dismissed because his fiduciary breach claims are duplicative and seek damages that are not available under ERISA (Doc. 17, pp. 6–8; Doc. 25, pp. 3–5).

### III. <u>Motion to Dismiss</u>

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly* that Rule

12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). Although federal pleading standards were retooled by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), notice pleading remains all that is required in a complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'"). In determining whether the allegations in the plaintiff's complaint are sufficient "to raise a right to relief above a speculative level," *Twombly*, 550 U.S. at 555, the Court assumes the truth of all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009).

With these principles in mind, the Court now turns to address the merits of the defendants' motion to dismiss.

### IV.    Analysis

**A. Failure to Exhaust Administrative Remedies**

Feazel concedes that he has neither exhausted nor attempted to exhaust administrative remedies under the Plan, but argues that such failure should be excused, either because exhaustion would be futile, or because he was wrongfully denied meaningful access to administrative procedures (Doc. 22, pp. 6–7). Feazel

contends that excusal from the usual exhaustion requirement is warranted in this case because the defendants have failed to demonstrate the existence of adequate administrative remedies, and because the defendants' failure to supply him with certain Plan documents "leaves ample possibility . . . that there is no such appeal procedure" (*Id.*). The defendants respond that they have demonstrated the existence of available administrative procedures by referring to them in the August 18, 2017 letter (Doc. 1, Ex. B) and subsequent correspondence with Feazel (Doc. 22, Ex. A, p.1), and that Feazel has failed to show that exhaustion would be futile because he has not alleged any facts tending to show that those claims and appeals procedures would not redress his grievances (Doc. 17, p.5).

ERISA provides that "[a] civil action may be brought . . . by a participant . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). Although ERISA allows an aggrieved plan participant to file a civil action, the statute does not explicitly state "whether exhaustion of administrative remedies is a precondition to filing that action." *Edwards*, 639 F.3d at 360. "However, because ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims," the Seventh Circuit has "interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the

statute." *Id.*; *see Powell v. A.T. & T. Commc'ns, Inc.,* 938 F.2d 823, 826 (7th Cir.1991) (citing 29 U.S.C. § 1133).

Requiring the exhaustion of administrative remedies prior to commencing a civil suit serves several important policy and practical purposes. First, it "encourages informal, non-judicial resolution of disputes about employee benefits." *Id.* This is consistent with the purpose of the statute because "the institution of . . . administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned." *Id.* (quoting *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244–45 (7th Cir. 1983)). The administrative remedy exhaustion prerequisite also helps to "prepare the ground for litigation in case administrative dispute resolution proves unavailing," because "[c]ompelling parties to exhaust administrative remedies can help a court by requiring parties, in advance of bringing suit, 'to develop a full factual record' and by enabling the court to 'take advantage of agency expertise.'" *Id.* at 361 (quoting *Janowski v. International Bhd. of Teamsters Local No. 710 Pension Fund,* 673 F.2d 931, 935 (7th Cir. 1982), *vacated on other grounds,* 463 U.S. 1222 (1983)).

"An ERISA plaintiff's failure to exhaust administrative remedies may be excused where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile." *Edwards*, 639 F.3d at 361

(citing *Stark v. PPM Am., Inc.,* 354 F.3d 666, 671 (7th Cir. 2004)). To be excused from the exhaustion requirement on futility grounds, Feazel "must show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubt[s] an appeal will result in a different decision." *Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 659 (7th Cir. 1992) (citing *Dale v. Chicago Tribune Co.*, *Tribune Co.,* 797 F.2d 458, 467 (7th Cir.1986), *cert. denied,* 479 U.S. 1066 (1987)). Furthermore, where a plaintiff "present[s] no facts to show that the review procedure would not work, the futility exception does not apply." *Id.*

Excusal may also be warranted where a claimant is not required to appeal due to a "lack of meaningful access to the review procedures." *Id.* There is a lack of meaningful access where the claimant attempts to initiate higher levels of review procedure, but is denied access to those procedures. *Id.*; *see Carter v. Signode Industries, Inc.*, 688 F.Supp. 1283, 1287–88 (N.D. Ill. 1988) (Aspen, J.) ("Generally, claimants are not required to exhaust administrative remedies when the conduct of the administrator amounts to a repudiation of the procedures, such as when an administrator neglects to submit claims to the proper reviewing body.") (citing *Vaca v. Sipes,* 386 U.S. 171 (1967)).

Ultimately, the determination of whether to excuse the exhaustion requirement is "a matter within the sound discretion of the trial court," *Orr v. Assurant Employee Benefits*, 786 F.3d 596, 601–02 (7th Cir. 2015) (citing *Kross*, 701 F.2d at 1244), and such a determination "will only be disturbed on appeal if the lower court has clearly abused its discretion." *Id.* at 602; *see also Zhou v.*

*Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) ("[W]e review a district court's decision to dismiss a complaint on exhaustion grounds for an abuse of discretion.").

Here, Feazel has not pleaded sufficient facts to show that he is entitled to excusal from the exhaustion requirement on either of the theories he advances. First, Feazel has not alleged any facts to suggest that it would be futile for him to pursue the administrative procedures apparently available to him under the LTD Plan. The August 18, 2017 letter from Ameren refers Feazel to "the Plan's summary plan description for . . . claims and appeals procedures" (Doc. 1, Ex. B), which plaintiff's counsel appears to have received (*See, e.g.*, Doc. 1, ¶¶ 36–37; Doc. 22, Ex. A). The letter also includes a phone number for the Ameren Benefits Center, to which "questions regarding [Feazel's] Long Term Disability Plan benefit payment" may be directed (Doc. 1, Ex. B). Feazel argues that the defendants' failure to provide him with certain other Plan documents "leaves ample possibility . . . that there is no such appeal procedure" (Doc. 22, pp. 6–7). Notwithstanding the plain language of Ameren's letter, which appears to contradict Feazel's claim, Feazel has not alleged facts to indicate that the claims and appeals procedures referenced in the letter could not redress his grievance. Feazel has thus failed to demonstrate that he should be excused from the exhaustion requirement based on futility.

Feazel also argues that he should be excused from the exhaustion requirement on the basis that the defendants wrongfully denied him meaningful

access to review procedures. Again, Feazel has not alleged any facts to suggest that he was denied meaningful access to review procedures. He does not indicate that he made any attempt to avail himself of the claims and appeals process referenced in Ameren's August 18, 2017 letter. Furthermore, in email correspondence between the parties appended to Feazel's response to defendants' motion to dismiss (Doc. 22), LTD Plan counsel references the available claims and appeals process, cites the relevant LTD Plan document, and offers to help Feazel file a claim or appeal (Doc. 22, Ex. A). Feazel has failed to allege any facts to show that he attempted to initiate such a claim or appeal, and that the defendants denied him access to such procedures.

Therefore, because Feazel has failed to allege facts showing that he should be excused from the exhaustion requirement, the defendants' motion to dismiss for failure to exhaust administrative remedies is granted.

### B. Breach of Fiduciary Duty Claims

Feazel also argues that the defendants breached their fiduciary duty to him in several ways, which caused him emotional distress and entitles him to compensatory damages (Doc 1, ¶¶ 29–38). The defendants respond that Feazel's fiduciary breach claims should be dismissed because they are duplicative and seek relief that is not available under ERISA (Doc. 17, pp. 6–8). The Court need not address this argument as it finds that plaintiff's case should be dismissed for failure to exhaust administrative remedies.

## V. Conclusion

For the reasons stated above, the Court **GRANTS** defendants' motion to dismiss plaintiff's complaint (Doc. 16) and **DENIES as moot** plaintiff's motion to strike (Doc. 27). The Court **DISMISSES without prejudice** plaintiff's complaint for failure to exhaust administrative remedies. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment.

**IT IS SO ORDERED.**

Judge Herndon
2018.04.13
13:24:49 -05'00'

**United States District Judge**